**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**JAY E. BAGLEY, JR.,**
        **Plaintiff,**

   **v.**                                     **6:02-CV-0285
                                                      (GLS)**

**COMMISSIONER OF SOCIAL SECURITY,**
                **Defendant.**

---

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky & DiMartino               HOWARD D. OLINSKY, ESQ.
Historic First National Bank Bldg.
186 West First Street
Oswego, NY 13126

**FOR THE DEFENDANT:**
HON. GLENN T. SUDDABY       WILLIAM H. PEASE
United States Attorney             Assistant U.S. Attorney
PO Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

**Gary L. Sharpe
U.S. District Judge**

## **DECISION AND ORDER**

### **I. Introduction**

Jay Bagley challenges the Commissioner of Social Security's final determination denying disability benefits.  *See*  42 U.S.C. § 405(g).  Having reviewed the administrative record, the court affirms the Commissioner's decision.

### **II. Procedural History**

On January 14, 1994, Bagley filed an application for Social Security Disability Insurance benefits (SSDI) and Supplemental Security Income (SSI), which was granted based on his mental retardation[1] and bilateral carpal tunnel syndrome.  (Tr. 19).  On July 20, 1999, the Commissioner notified Bagley that his health had improved since his last review, and benefits were terminated in September 1999.  *Id.*  Bagley requested reconsideration, and on October 27, disability hearing officer Miles affirmed the termination of benefits.[2]  *Id.*

---

[1] Bagley obtained a valid verbal IQ score of 67.

[2] The Social Security regulations provide for disability hearings if the SSA has made "an initial or revised determination based on medical factors that [claimant is] not now disabled because [his] impairment: (I) has ceased; (ii) did not exist; or (iii) is no longer disabling."  20 C.F.R. § 404.914(a)(2).  The disability hearings are "conducted by a disability hearing officer

2

On February 27, 2002, Bagley brought this action pursuant to 42 U.S.C. § 405(g). (Tr. 13). The Commissioner answered and filed an administrative transcript, Bagley then filed his brief and the Commissioner responded.

### III.  CONTENTIONS

Bagley claims that the ALJ erroneously: (1) evaluated the severity of his impairments under 20 C.F.R. Part 404, Subpart P., Appendix 1, Part A., § 12.05(c); (2) used an improper comparison date for the finding of medical improvement; and (3) relied solely on the grids in determining his level of disability from his non-exertional impairments. The Commissioner counters that substantial evidence supports the ALJ's disability decision.

### III.  FACTS

The evidence in this case is undisputed and the court incorporates the parties' factual recitations. *See Pl.'s Br., pp. 2-6, Dkt. No. 6; Def.'s Br., p. 2, Dkt. No. 9.*

---

who was not involved in making the determination [that claimant is] appealing. The disability hearing officer will be an experienced disability examiner ... appointed by a State agency or by the Director of the Office of Disability Hearings or his or her delegate." 20 C.F.R. § 404.915(a).

## IV.  DISCUSSION

### A.  Standard and Scope of Review

A court's review of the Commissioner's final decision is limited to determining whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Urtz v. Callahan*, 965 F. Supp. 324, 326 (N.D.N.Y. 1997) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Although the Commissioner is ultimately responsible for determining a claimant's eligibility, the actual disability determination is made by an ALJ.  The ALJ's decision is subject to judicial review after an appeal is filed.  A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *see Rivera v. Sullivan*, 923

F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The court has authority to reverse with or without remand. 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris*, 626

F.2d 225, 235 (2d Cir. 1980); *Cutler v. Weinberger*, 516 F.2d 1282, 1287 (2d Cir. 1975) (remand to permit claimant to produce further evidence). Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of HHS*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of determining disability).

## B. **Legal Standard for Termination of Disability**

Once the SSA determines that a claimant is entitled to benefits, it conducts periodic reviews to evaluate the claimant's continued eligibility. *See* 20 C.F.R. § 416.994(a). Upon review, if the Commissioner finds that the claimant is no longer disabled, his benefits may be terminated. 42 U.S.C. § 1382(c)(4); *see also Matice v. Comm'r of Social Security*, No. 99-cv-1834, 2004 WL 437472, at *3 (N.D.N.Y. Feb. 11, 2004). "However, benefits can only be terminated if there is substantial evidence demonstrating a 'medical improvement' which enables the individual to

6

engage in substantial gainful activity." *See id.*

To ensure that disability reviews are uniform, the SSA follows a sequential evaluation process to determine whether a claimant's disability continues. *See* 20 C.F.R. § 416.994(b)(5)(i-vii); *see also Lora v. Massanari*, No. 000-cv-8958, 2002 WL 655208, at *6 (S.D.N.Y. Apr. 18, 2002). First, the SSA assesses whether the claimant's impairment or combination of impairments meets or equals an impairment contained in the listings. 20 C.F.R. § 416.994(b)(5)(i). At step two, if the claimant does not have such an impairment, the SSA must then determine whether there has been a medical improvement in the claimant's condition. 20 C.F.R. § 416.994(b)(5)(ii). "Medical improvement" is defined as any decrease in the medical severity of a claimant's impairment(s) which was present at the time of the most recent favorable medical decision regarding disability. 20 C.F.R. § 416.994(b)(1)(i). The SSA determines medical improvement by evaluating "changes (improvement) in the symptoms, signs and/or laboratory findings associated with [a claimant's] impairment(s)." 20 C.F.R. § 416.994(b)(1)(I). In order to make this determination, "the SSA must compare the current medical severity of the impairment to the medical severity of the impairment at the time of the most recent favorable medical

7

decision." *Veino v. Barnhart*, 312 F.3d 578, 586-87 (2d Cir. 2002).

Next, at step three, "[i]f there has been medical improvement, the ALJ must decide whether the medical improvement relates to the claimant's ability to work." *Batista v. Barnhart*, 02-cv-3779, 2004 WL 1719454, at *6 (E.D.N.Y. Jun. 18, 2004). At step four, if the ALJ finds that there has been no medical improvement or that the medical improvement is not related to the claimant's ability to do work, then disability benefits should continue. 20 C.F.R. § 416.994(b)(1)(iii).

At step five, if medical improvement is found to be related to an individual's ability to work, the next inquiry is whether the combination of all of the claimant's current impairments are severe. If the claimant's impairments are indeed severe, the SSA must consider the impact on his ability to do basic work functions. 20 C.F.R. § 416.994(b)(1)(v). If the evidence shows that all of the claimant's current impairments do not significantly limit the claimant's physical or mental abilities to do work functions, the impairments are not considered severe in nature. *Id.*

At step six, if the claimant's impairments are considered severe, the ALJ will assess whether he can do his past relevant work. *Id. at* § 416.994(b)(1)(vi). If not, at step seven, given the claimant's RFC, in

8

conjunction with his age, education and past work experience, the ALJ will consider whether he can do any other work.  If the claimant can, disability benefits will end.  If the claimant cannot, disability will continue.  *Id at* § 416.994(b)(5)(vii)*; See Batista*, 2004 WL 1719454, at *6.

**C.  ALJ's Findings**

In this case, the ALJ addressed all the requirements for termination of disability under 20 C.F.R. § 416.994.  Specifically, the ALJ began by finding that Bagley did not have an impairment or combination of impairments that met or equaled the severity of an impairment listings.  (Tr. 29).  More specifically, the ALJ found that Bagley's bilateral carpal tunnel syndrome had improved to the point where it was no longer severe.  (Tr. 25).  Based on this finding, the ALJ determined that Bagley was able to perform work at all exertional levels.  *Id.*  Although, the ALJ found that Bagley's low IQ was still a severe impairment, it only limited him to unskilled work and did not compromise his physical abilities to do a wide range of jobs.  (Tr. 26-7).  Accordingly, the ALJ found that Bagley was not disabled and terminated his benefits.  (Tr. 29).

**D.  Analysis**

9

### 1. **Medical Evidence**

Bagley claims that the ALJ erroneously: (1) evaluated the severity of his impairments under 20 C.F.R. Part 404, Subpart P., Appendix 1, Part A., § 12.05(c); (2) used an incorrect comparison date for the finding of medical improvement; and (3) failed to consider his other alleged impairments pursuant to 20 C.F.R. § 404.1594(b)(5).[3]

An impairment is not severe if it does not significantly limit a plaintiff's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921(a). Basic work activities relate to the abilities and aptitudes necessary to do most jobs. *Id.* These activities include physical functions such as walking, sitting, lifting, pushing, pulling, reaching, carrying or handling. 20 C.F.R. §§ 404.1521(b) and 416.921(b).

Bagley contends that the ALJ improperly determined that his carpal tunnel was no longer a "severe" impairment. Specifically, Bagley contends that the ALJ improperly relied on the fact that he no longer sought treatment for his carpal tunnel. This contention is without merit.

---

[3] 20 C.F.R. § 404.1594(b)(5) states in pertinent part that: "[the SSA] must show that you are able to engage in substantial gainful activity before your benefits are stopped. When doing this, [the SSA] will consider all your current impairments not just that impairment(s) present at the time of the most recent favorable determination."

10

As the ALJ noted, there is substantial evidence in the record to show that by July of 1999, Bagley's carpal tunnel had improved.  (Tr. 25).  Moreover, Bagley not only stopped seeking treatment for his condition, but was also able to drive, work as a disc jockey and perform other activities that a claimant with severe carpal tunnel would not be able to perform.  *Id.*  Dr. Berton Shayevitz conducted an orthopedic examination of Bagley in July of 1999, and opined that he had no physical limitations.  (Tr. 24).  Dr. Shayevitz also noted that Bagley was able to use his hands and fingers to drive, deliver pizzas and work as a disc jockey.  *Id.*  Finally, Dr. Shayevitz found that Bagley's objective signs of carpal tunnel were negative.  *Id.*  Given the medical evidence, the ALJ's decision was supported by substantial evidence.

Next, Bagley argues that the ALJ's finding of medical improvement was based on an inaccurate point of comparison date.  The Regulations state that to determine whether a medical improvement has occurred, the SSA will compare the current medical severity of that impairment(s) with the severity of that impairment(s) at the time of the most recent favorable medical decision.  20 C.F.R. § 404.1594(b)(7).  "The most recent favorable medical decision is the latest decision involving a consideration of the

11

medical evidence and the issue of whether [the claimant] was disabled or continued to be disabled." *Id.*

Here, Bagley was previously found disabled on June 9, 1994. The ALJ used June 9 as a comparison date since it was the date of his last favorable disability determination. (Tr. 21). Bagley contends that the ALJ erred and should have used the date of his continuing disability review, February 14, 1996. He also contends that the ALJ did not consider his development of a severe elbow impairment. These contentions are without merit because there is no evidence that the February 1996 review constituted a medical-reevaluation of his disability status.

The February 1996 review merely indicated that Bagley had voluntarily stopped his trial work period, but did not constitute a record of disability. (Tr. 99). Moreover, there is nothing in the record to show a severe elbow impairment, and therefore, changing the comparison date, would have had no effect on the ALJ's analysis. Accordingly, the ALJ's decision was supported by substantial evidence.

Third, Bagley claims that the ALJ did not consider all his impairments

12

as required by 20 C.F.R. §404.1594(b)(5).[4]  Specifically, he asserts that the ALJ only considered the impairments that existed before July 1999 and did not consider his two back injuries that resulted from car accidents in September 1999 and February 2000.  This contention is without merit.  The ALJ noted that as of July 1999, Bagley was notified that his benefits would be terminated because of his improved health.  (Tr. 19, 27).  Therefore, the ALJ properly considered Bagley's impairments up to July 1999, but no new impairments that arose after this date.  While the regulations require the ALJ to find that Bagley's disability continued if he sustained a new severe impairment within a month from when his last impairment ended, the facts in this case do not support this contention because no new impairments arose.  See 20 C.F.R. § 404.1598.[5]  Bagley's back injuries were sustained after the SSA had found that he was no longer disabled.  Accordingly,

---

[4]20 C.F.R. §404.1594(b)(5) states that [i]n most instances, we must show that you are able to engage in substantial gainful activity before your benefits are stopped. When doing this, we will consider all your current impairments not just that impairment(s) present at the time of the most recent favorable determination. If we cannot determine that you are still disabled based on medical considerations alone (as discussed in §§ 404.1525 and 404.1526), we will use the new symptoms, signs and laboratory findings to make an objective assessment of your functional capacity to do basic work activities or residual functional capacity and we will consider your vocational factors."

[5]20 C.F.R § 404.1598 states that "[i]f a new severe impairment(s) begins in or before the month in which your last impairment(s) ends, we will find that your disability is continuing. The new impairment(s) need not be expected to last 12 months or to result in death, but it must be severe enough to keep you from doing substantial gainful activity, or severe enough so that you are still disabled under § 404.1594."

13

these injuries could not have established a disability continuation under 20 C.F.R. § 404.1598. Thus, the ALJ's decision was supported by substantial evidence.

### 2. Residual Functional Capacity (RFC)

Bagley also contends that the ALJ erroneously determined that he is capable of a full range of work at all levels. Specifically, Bagley asserts that prior to the car accidents, he was restricted in his ability to lift and carry. Subsequent to the car accidents, his exertional limitations were even more pronounced.

Regulations define RFC as "what [an individual] can still do despite [her] limitations." *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). At the review level relevant here, the responsibility of determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 404.1546, 416.946. An ALJ's RFC assessment is a medical determination that must be based on probative medical evidence in the record. *See Gray v. Chater*, 903 F. Supp. 293, 301 (N.D.N.Y. 1995) (citation omitted). Moreover, an ALJ may not substitute his judgment for that of a competent medical physician. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted).

Here, in determining Bagley's non-extertional limitations, the ALJ

14

relied on a May 1999 psychiatric assessment of Dr. Noia. Dr. Noia opined that Bagley had the non-exertional capacity to do a full range of unskilled work. (Tr. 22). Dr. Noia also found that the results of his examination were not consistent with the allegations of mental retardation. *Id.* The ALJ also cited the opinion of Dr. Shayevitz, who examined Bagley in May 1999, and found that his carpal tunnel was resolved and that he had no physical limitations. (Tr. 24). Accordingly, the ALJ's decision was based on substantial evidence.

### 3. **Vocational Medical Guidelines (Grids)**

Lastly, Bagley contends that the ALJ relied solely on the grids in determining his level of disability. Specifically, he contends that the ALJ failed to recognize his borderline I.Q. as a severe non-exertional impairment limiting his ability to perform work. He also argues that the ALJ should have consulted a vocational expert.

The grids, set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 2, take into account a claimant's RFC, age, education, and work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a); 20 C.F.R. § 404.1569a(a); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). "'Generally speaking, if a claimant suffers only from exertional impairments, *e.g.,* strength limitations,

then the Commissioner may satisfy her burden by resorting to the applicable grids.  For a claimant whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he is disabled.'"  *Rosa*, 168 F.3d at 82 (quoting *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996)); *see also Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).

Whether the grids apply is to be determined on a case-by-case basis. *Pratts*, 94 F.3d at 39 (citing *Bapp*, 802 F.2d at 605-06).  Sole reliance on the grids is improper if a claimant suffers from both exertional and non-exertional impairments.  *See Pratts*, 94 F.3d at 38-39; *Bapp*, 802 F.2d at 605-06.  Where the claimant's non-exertional impairments "significantly diminish" the range of work allowed by his exertional impairments, the grids alone do not "provide the exclusive framework for making a disability determination."  *Bapp*, 802 F.2d at 605-06.  To "significantly diminish" the claimant's range of work, a non-exertional impairment must cause an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."  *Id.* at 606; *see Pratts*, 94 F.3d at 39.  Where the claimant's range of work is significantly diminished by a

16

non-exertional impairment, the Commissioner must adduce vocational expert testimony showing that the claimant can still perform a significant number of jobs available in the national economy. *See Bapp*, 802 F.2d at 606; *Pratts*, 94 F.3d at 39.

However, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work--over and above any incapacity caused solely from exertional limitations-- so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *See Bapp*, 802 F.2d at 603.

Here, the ALJ was not required to consult a vocational expert. More specifically, there is no evidence that Bagley's non-exertional limitation, namely his low I.Q., significantly limited the range of work that he could perform. Furthermore, the ALJ did not mechanically plug Bagley's limitations into a formulaic grid. The ALJ cited Rule 202.21 as a

17

"framework" for reaching his decision. (Tr. 28-9). The record shows that the ALJ considered other factors such as Bagley's age, education, work history, and RFC. *Id.* Thus, the Grids were not the sole means of analysis used by the ALJ because he also based his decision on the opinion of Dr. Noia who found that Bagley was able to perform the basic demands of unskilled work. *Id.*[6] Accordingly, the ALJ decision was based on substantial evidence.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED,** that the decision denying benefits is **AFFIRMED**; and it is further

**ORDERED,** that the Clerk of the Court provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

March 16, 2006
Albany, New York

*[signature]*
United States District Court Judge

---

[6] The ALJ found that Bagley could perform the basic job duties, including: the ability to understand, remember and carry out instructions, respond appropriately to supervision, co-workers and usual work situations, and to deal with changes in a routine setting. (Tr. 22,29).

18